So the last case that we'll hear argument is Calvert-U.S. v. Calvert-Cata, 23-2,000. Yeah, yeah. Good afternoon. My name is Hans Erickson. I'm here on behalf of Peter Calvert-Cata. Counsel, before you really get started again, this is one of the second case I've got a problem with the time, the timing. How much time is left in, because I understand your client I believe is incarcerated, isn't that right? Yes. How much time left does he have before he's eligible to get out? Well, last I checked, he's still in jail, but that might be different when I'm finished here, to be honest. I think his release date is today. But I don't think that that should concern the court very much because there are still a number of things that could happen that would be extremely valuable to Mr. Calvert-Cata and it would be appropriate if the court reversed and remanded for resentencing, not least because... So he's not in custody anymore as of today? Well, he's supposed to be out today. At this moment, I don't actually know, but today is supposed to be his release date. It's changed a couple of times. Okay, if he's supposed to be and is actually released. Well, if this court sends this case back for resentencing and the revocation range is so substantially different, it's 3-9 with just the failure to report versus 24-30 months if the violation is a new crime. Could you raise the podium a little bit? Of course. So essentially, he could have credit towards any future revocation sentence if he were to be resentenced within the revocation range upon resentencing. It also would affect, most likely, the amount of supervision that he has to serve because he has a... If he were sentenced essentially within a new guideline range and to the same period of supervised release, he would have less supervised release to serve. So it would affect his liberty in those two ways. The district court here revoked Mr. Calvercott to supervised release because it intentionally applied the wrong legal standard for admitting hearsay evidence at a revocation hearing. The district court intentionally ignored this court's controlling authority in Jones and instead created its own rule inspired by a concurrence from the Fifth Circuit. Knowing that approach wouldn't withstand scrutiny by this court, the district court attempted to base its revocation on alternate grounds. But still committed reversible error. Is your argument strictly that the trial court applied the wrong... In other words, he should have applied what? A reasonable... He should have applied a balancing test. Yeah, the balancing test. That's what I'm trying to think. Is that your argument that he did not apply the balancing test? And is the balancing test just one of several tests or is that the only test that could be applied in this case? In the Tenth Circuit, the balancing test is the end of the story, end of the line. And this court in Jones said that the balancing test is the way the courts determine whether... Let me go forward then because this is just me, but it appears to me that Judge Browning did not follow the Tenth Circuit law in regards to this. But the question is, is there more than one test that can be applied? And here's what's sticking in my craw. At trial, the government has to prove beyond a reasonable doubt. Okay. But the testimony here, even though it may have been hearsay, would have been accepted in a regular criminal trial and could have been admissible. Now, why do we apply a standard that in a revocation proceeding, which only takes a preponderance of the evidence, why do we say that there's only one test that can be applied instead of... If it's admissible at a regular trial, it certainly could be admissible at a revocation hearing. Sure. And I think the court is aware of the same paradox as the way that Judge Oldham in the Fifth Circuit described it, where you might have circumstances where that confrontation right, it's the same name, but it's really a right that flows from two different constitutional origins, one from due process and then revocation hearing, and one at trial from the Sixth Amendment. So this court in Jones observed that these are two separate rights. And to quote this court, because the Sixth Amendment's right to confrontation does not apply in this situation, meaning revocation, neither do any Supreme Court cases dealing with it, specifically Crawford. So because you have these two different lines of interpreting that right, there are situations where it's going to lead to a different result. I think I would actually point out that Judge Browning, the district court, is very well aware of this. He, in a footnote, described a case that he dealt with years earlier. He applied Jones correctly, and it reached a different result. And he acknowledged that if he applied it the way he was doing it today at the time of the revocation hearing, it would reach a different conclusion. And that's just one of many occasions where it's very clear that the district court is aware that it's not following this court's precedent and amending its own rule. Then let me ask you, is it saved by issue number three, where he just shortly says, well, if I apply the test, I'm going to do that. Does that satisfy what we're looking at? Issue number three, do you mean the alternative where we just use the non-hearsay statements? Yeah. It's very difficult for me to believe that any reasonable fact finder would have come to that conclusion without having already sifted through the hearsay that the judge has spent 48 pages out of 50 discussing. Those inferences that the court uses to find a revocation, those are in the last two pages of that 50-page memo. There are a couple of ways to think about what is in front of the court in terms of facts at that point. But we have basically a person with injuries of unknown origin. She is upset. And the only thing in this isolated area is a car, which the police know is registered to that injured person's boyfriend. That is it. There is no allegation that Mr. Cavercato was in the car, drove there, was present. He's not found there. They don't arrest him on the scene. He's just not a witness. The witness testifies, though, that the marks on her neck were consistent with strangulation that evening, correct? That is a correct recitation of his statement. I think that's right. Now, he doesn't say by this evening. I mean in the last hour, the last two hours, the last three hours. We don't know how long this person who comes out of the tree line has been there, whether that was five minutes ago, whether it was three hours ago. All of that is outside the scope of what the district court knows at this time. So from the perspective of the police officer, that officer has a lot more information because he doesn't have to worry about rules of hearsay. He hears what that person coming out of the woods has to say. He sees her coming. She says something to him. He can make observations about what's going on. The person makes allegations about what happened and who did it and when. That's the police officer's movie that he's watching. But without the hearsay, it's a silent picture. It's just a person walking out of the woods. And the district court uses that image to reach the conclusion that there is an assault. There was intent to injure. And most importantly, that somebody who's not even there is the one who did it. And that's what's very difficult to imagine without the hearsay. But don't we have to – we had a recent unpublished opinion in Katz that – where we said in applying the – you know, the failure to apply the Jones test that we look at the competing versions. And so why is it not a reasonable fact finder's adjudication under the preponderance standard to say, look, we know the defendant's car is right under the underbrush. She's coming forward to us panicked, running, desperate, obviously injured at some time that evening. It's – so what could have caused her to have these marks on her neck? One would be, well, she was driving her boyfriend's car and had a wreck. And she's really upset and panicked and running to the Lieutenant Cassius. And another is, you know, that the owner of that car, the boyfriend, is the one that caused those marks on the neck. Why isn't it – you know, even if we don't view the evidence favorably to the ruling, which I'm not sure whether we should or not, why isn't that at least a reasonable fact finding based on the preponderance standard? There's only two real possibilities. I think that it is – it's difficult for a fact finder to separate admissible and non-admissible evidence. It's easier for a judge to do than it is for a jury. But I don't think it's fair to assume that the only possibilities in the universe of possibilities are that the registered owner of the car is the one who drove there and the registered owner of the car is the one who assaulted this person. The complaining witness obviously is in a relationship. We know that. It's a fact. There's no reason to think that she doesn't have access to the car. And in fact, I think it's part of the record that she actually did drive the car at some point that night. She could have been driving somebody else. Somebody else could have met her in the woods. I mean there's just a million things that could have happened. And it's not up to Mr. Calvert-Conta to propose some alternative version of the facts. It's up to the government to demonstrate by a preponderance that this happened. And they just can't do it without the non-hearsay in the way that Judge Browning would like to do. Do we view the evidence favorably to the government? We do typically in Jackson v. Virginia. Do we do that in the context of Rule 32.1? You still do. And the question here is the standard is clear error. But the question here really goes beyond that. Given this incredibly minimal amount of facts, was it reasonable for the district court to draw those inferences? And this is a case that's over that difficult-to-meet line because there is so little for him to work with. And it is apparent that those inferences are infected basically by all the hearsay that the court has spent so much time very carefully considering. I'm very sympathetic to your argument, honestly, about did Judge Browning really put that out of his mind. But I really don't know how we can take your position and say we just don't really believe Judge Browning. That's really the upshot of your argument, isn't it? You don't have to disbelieve him. All you have to do is question whether he made reasonable inferences. And on these facts, he cannot have done that. I think what I would encourage the court to do is consider those very basic facts again and again, that we have this person in injuries. She makes no statements. There is no allegation that anyone assaulted her at all. And there is no identification of anyone. She doesn't say this person did that, that person did that, this happened, went. We just don't know that. There's no accusation at all. And to go from injuries to an assault by a particular person, it's just very difficult for me to conceive of a situation where any fact finder would have been able to make that leap. So you're saying we can assume, well, the facts are undisputed. He didn't find any facts. The facts are undisputed. She's coming out of this brush area, and it was his car. The question is, so can you conclude from that? So that's not a finding. Those are the undisputed facts. Well, the court is fact finder is allowed to make inferences from those facts. At that point, they're still making factual findings, but they're separated by inference. But don't they have to state why they can draw the inferences from the undisputed facts? There are two possible inferences. Don't they have to say why one is more proper than the other? Well, they certainly don't do that here. They just say that they state more than one reason. No. If you have undisputed facts, which we have here, and the judge draws an inference against the defendant, rather than drawing the inference that something else happened, you know, a wreck, she was driving. If there are two possible inferences, does the judge need to say why that judge selected one inference over another? Is that an obligation? To be honest, I don't know the answer to that question. In this case, I think we have not two possibilities, but an infinite number of possibilities. The judge has picked one that is consistent with the evidence it knows because it's heard the hearsay, and that's why it reaches that conclusion. I would like to reserve at least a minute. I'd like to hear what you're saying, the multiple positions that the judge could take. Everybody's talking about two. There was only two. And you're saying, well, there's more than two. Tell me what the more than two would be. Oh, well, this is getting to the hypothetical we talked about. She could have been driving somebody else. Another person could have assaulted her. I mean, on the most basic set of inferences, he did it or he didn't do it. I mean, you can boil it down that way, or you can boil it down to, she was with a friend in the car. They got into a fight, and she strangled her. That's another one. And I can come up with a million of those. That's why I say infinite versus two. But take it either way you like, I suppose. Thank you. Thank you. Thanks. May it please the court. Matt McGinley on behalf of the United States. As former judge and now Justice Gorsuch said in United States versus Henry, it would be pretty anomalous if the qualified confrontation right recognized by Rule 32.1 and our precedent conveyed rights and revocation   Thank you. Sixth Amendment confrontation clause in criminal trials. And in the next sentence, he pointed out if the anomaly would exist because the declarant was actually a witness in the case and subject to cross-examination. So wasn't that the reason that then Judge Gorsuch found it anomalous to say that there would have been a denial of due process when the declarant was available and actually testified? I don't think both of those. Yes, Your Honor. I don't think we can read. That fact is eliminating his quote. I think he's broadly stating and then just turns to state, yeah, the declarant in that case was there. So the argument was non-starter. But I think that we have to take that quote. And the reason we have to is because as the Supreme Court has said, as a starting point, and this is a starting point for this appeal, the protections at revocation are at most the same as those at trial. And this appeal is about a gap in the law. We precisely have found where we have rights broader at revocation than we have at trial. And that can't be because we know once a defendant has been afforded a fair right and convicted of the charges that he's been faced, the presumption of innocence disappears. So we have to look through this lens when we move to revocation. And it's with these foundational understandings and rights between trial and revocation that the United States and- Let me ask you this, Counsel, because that's all nice. But the question that I have as to what Judge Browning did, do you agree that Judge Browning did not follow Jones in this case? The United States is-he did not apply Jones to the hearsay. The United States is- All right. So what we have before us then is the third element of the issues that we have. And does that save his failure to apply Jones? Now, that's oversimplification. I like to keep it pretty simple. So that's why I'm asking you, does the third issue save this case for him not following Jones in this search? It does, Your Honor. I don't think that Jones-you even have to get to Jones with what Judge Browning did, so I think that nothing in Jones forecloses his initial analysis. I think they can live together. Do you think he was right in one and two? Yes, Your Honor. Okay. But as far as question three or pathway three that you're asking, we have multiple inferences. And I think that if we decide that Judge Browning can't discuss the law prior to getting to his fact findings after excluding the hearsay statements, then we're eliminating district courts from making alternative analyses and eliminating district courts from creating a broader record for appeal. But as far as the fact findings, the inferences that he based on is we knew that Calvert-Cotta and Insinius were in a relationship, and we knew that the car was registered to her. So he is making inferences that it was- Calvert-him that you meant. You meant him, right? Correct. Judge Browning is making inferences that Calvert-Cotta was the one who strangled her based on owning the car and being in a relationship. He's not just making an inference that she's out there, and so it has to be Calvert-Cotta. And just to go as far as to answer your question that you had with co-counsel, he doesn't have to make other inferences. We know based on the law with fact finding that if the inference is plausible in light of the record as a whole, we can't overturn his fact finding, and we can't find that he abuses discretion for relying on those facts. And it's actually where there are two permissible inferences, there are two permissible views of the evidence. The fact finder's choice between the two cannot be clearly erroneous. And to touch on your question regarding, so the two actual issues in this case are intent, whether there was intent to put force onto Antenius, and whether the identity of the attacker is. As far as intent, that can be found on page 92 of the record. And Judge Browning said the location and extent of her injuries, bruising, makes it more likely than not that they were the result of an intentionally applied force rather than an accidental bump or push. When officers encountered Antenius, she was crying and visibly shaken, extremely scared. And Judge Browning inferring that an intentional act of violence would upset Antenius more than an accidental or negligent application of force, Judge Browning concluded that it is more likely than not, proponent to the evidence standard, that Calvert Cotta purposely applied force to Antenius. And he intended to harm her. I don't think that those are findings and his inference is it can be overturned. He is basing those on facts that have been found in the case. And as far as identity of the attacker, borrowing Calvert Cotta's car would not explain why Antenius was alone in a very rural area with nothing but tree line, frantically running, scared, crying, shaking, and covered in injuries consistent with recent strangulation attempts. So this evidence has to be plausible in light of the record when we know that Calvert Cotta were in a relationship, only Calvert Cotta's car was in the vicinity, nothing in the record establishes other people were there or other vehicles. And we have Antenius who was running scared with fresh injuries. There is nothing in the record that contradicts this, and this can be found on page 90 and 91. So I don't think that Judge Browning simply pretended, as opposing counsel has said. He made specific factual findings as to identity and intent, and he did so based on non-hearsay. And, again, this goes back to we can't question whether he had his opinion infected, especially knowing that court. I think that almost every opinion coming out of there is well-reasoned, and he considers all alternative analyses. Going back, if I may, to the first analysis, because I think this is an important point and a gap that the United States would like to know, given revocation comes up all the time. It's the tenets of revocation, if we look at Morrissey v. Brewer or even other cases, is we're supposed to view a wider swath of evidence. You know, the confrontation right is lowered. The United States' position, why Jones and even recent cases, and I apologize if I do violence to the names, I think it's Fiance and Delgadillo, some of these cases coming, is those cases presuppose that there's a The United States' position is there cannot be a confrontation right. If there's not a confrontation right under the Sixth Amendment, then by definition there cannot be a confrontation right under the Fifth Amendment Due Process Clause. So you're saying Jones was wrong? I'm not saying Jones was wrong. I'm saying Jones would apply. So here, for example, we have two encounters, and Judge Browning completely eliminated the second encounter after Encinias went to the police station. So they live together because those are testimonial statements, and Jones never addressed testimonial statements. It just simply addressed hearsay. So in this case, we actually have a matter where Judge Browning could have applied both. So we find there's non-testimonial statements that need a hearsay exception, or the broader sense is they're admissible at trial. That's the easy way to put it. So that's pathway one, and he applies those to the first statements. The second encounter, Jones applies because we know that they're testimonial. So Jones is not wrong. Rule 32.1 is not wrong. They both can live together. It's just in this instance the United States is saying that there is no confrontation right when it's non-testimonial statements. And I think that flows from Morrissey v. Brewer and its progeny, just understanding what we're supposed to do at revocation. I understand that it's not a criminal proceeding, but we're trying to have a judge be more informed with more evidence. Yes, the implication of your argument, I guess, is that if there was no violence to the right of confrontation, that it was automatically consistent with due process. Correct, Your Honor. The United States' position is by definition it must be because the Supreme Court has told us that the rights at trial or at revocation, at most, are equal to trial. And then we have other cases telling us that the confrontation right is not absolute. We have cases that tell us that even Jones itself, when we're lessening the right just based on reliability or other factors. So I think by definition, if it's trial admissible, it has to be admissible. So you would say that Jones is not an error, but it's not the only way that you can arrive at this situation. For example, the testimonial. So Jones applies, but it's not the only way that you can get there. You're saying that we would write a case that would say, Jones applies here, but it was not error, and that there are other ways that you can also satisfy this issue. Yes, Your Honor. And I don't know how the court would style it, but I think the rule would go about if you have trial admissible evidence specific here, non-testimonial evidence, then that's a threshold or an alternative to Jones. But if you don't, then Jones must apply. It sounds like you're really saying maybe this is the same thing, but tell me if I'm misunderstanding it, that if the testimony falls within a hearsay exception, you don't require Jones. No, Your Honor, because hearsay does not address testimonial versus non-testimonial statements. All right. I agree with Judge Bacharach, because if it's hearsay, but it's an exception to the hearsay, then wouldn't that be an exception to Jones? Based on Jones, I think that that goes to reliability, and then that's when you would be testing whether the confrontation right is lesser. But if it's non-testimonial, the confrontation right doesn't exist. Whereas hearsay is not removing the right from the scale under Jones in Rule 32.1, non-testimonial statements do remove that, so there is nothing to balance under Jones. And as far as— Are you not saying that? Are you not saying that Jones does not apply to evidence at a revocation hearing that would be admissible at a merits trial? I am saying it in the fact that to be trial admissible, it has to be non-testimonial. So that's just the broader sense. But absolutely, testimonial statements could be admissible under Jones, if I'm understanding your question correctly. All right. Well, from that, does one conclude that Jones does not apply to evidence in a revocation hearing that would otherwise be admissible in a trial on the merits? Yes, Your Honor, because the Constitution would apply a trial on the merits. To touch briefly on the second part of good cause that is kind of the second pathway and probably the least favored, I think that it would be unthinkable to, again, not allow—if Jones has to apply every time a revocation, to not allow trial admissible evidence to be a good cause. As Judge Browning did, I think, correctly point out, it removes our hurdle that we now have a revocation that's not present at trial, and then it does harmonize the evidence that would be at both. And again, it would allow courts a wider swath of evidence to consider. And on top of good cause, we have not found any case that strictly limits it to witness or victim in this case. Well, but on the other hand, that's true, but if every single published or unpublished did serve an opinion, applying the second factor of Jones, the court, including Jones itself, was talking about the good cause for the inability to present the witness. Never about reliability, right? I do think that there has been a recent case, and it is United States v. Delgadillo that talks about how powerful or reliable that the statement can be. So if we're looking at reliability as a factor under good cause, then there has to be a point where the statements are so reliable that we no longer care about the reason why the government didn't call the witness. And I think Delgadillo kind of touches on that, and then other circuits, United States v. Lloyd, says in some cases a release sees interest in confrontation, may be overwhelmed by the hearsay's reliability, such that government may not show cause for the declarant's absence. And I think we just have to look at it in those lights. So I'm not trying to be hyper-technical, but I understand an argument that the evidence is so reliable that you don't get to good cause. Are you saying in this Delgadillo case and this other case that the court actually did what Judge Browning did and said, I'm going to apply Jones, but I am going to find good cause based on the reliability, as opposed to the good cause for the inability to present the declarant? No, Your Honor. In that Delgadillo case, there was a showing of cause. It was a case that occurred during the pandemic, and the government's reasoning for not calling the witness was they did not want to speak. Is it fair to say that no court has ever done what Judge Browning did on his second rationale? It is fair to say that, Your Honor, yes. Is the case that you just recited, is the first of those a 28-J matter? Should it be? Is it since you filed your brief? They came out one late March. The other is late June. Are they in your brief? They are not, Your Honor. You need to file a 28-J letter if you're relying on them. We are not relying on them. All of these cases presuppose that there is a rule. These cases just go to A, that there is a right to confrontation. If you want us to read them, you ought to submit the 28-J letter. If you don't want us to read them, don't. Yes, Your Honor. I see that my time has concluded, barring any further questions. All right. Thank you. Thank you. There is a lot of discussion about how to interpret the rules of evidence and the Sixth Amendment to determine whether a person has a confrontation right at a revocation hearing in the argument we just had. I want to return to Morrissey where this Supreme Court said that people have a due process right to confrontation that's different than the Sixth Amendment and it applies in a revocation proceeding. The rules of evidence don't apply. What the government would like this court to do is rely on the Sixth Amendment in Crawford and the rules of evidence to decide whether that separate, independent right to confrontation exists at a revocation hearing. That's contrary to the law in the circuit and it's one of the several errors that the district court committed in revoking Mr. Cavacatt's supervision. All right. Thank you. Thank you very much. This banner is submitted. I thought it was well presented and you braced an argument today, so we appreciate your zealous advocacy. Court is in recess until 9 o'clock tomorrow morning.